A. J. TULLOCK v. JOAB MULVANE.

No. 11,318.    (60 Pac. 749.)

1. INJUNCTION—*Attorneys' Fees—Case Followed.* The case of *Mulvane v. Tullock*, 58 Kan. 622, 50 Pac. 897, affirmed and followed.

2. ——— *Action on Bond—Pleading and Practice—Case Distinguished.* When a petition claiming damages is not demurrable for insufficiency in its statements of fact to constitute a cause of action, but is only subject to a motion to make it more definite and certain as to the allegations of damages sustained, and upon it a first trial is had, in the course of which the plaintiff makes a full disclosure of the several items constituting his demand, it is not error, upon a second trial and at the close of the plaintiff's evidence, during which the same disclosures were made, to allow the petition to be amended by setting out the various items of damages claimed, so as to conform to the evidence given. The case of *Walker v. O'Connell,* 59 Kan. 306, 52 Pac. 894, distinguished.

3. ——— *Effect of Dismissal of Action for Injunction—Case Distinguished.* When an action is brought to compel the specific performance of a contract of sale, and, as incident thereto, for an injunction to restrain a sale of the property in question to another person, and the plaintiff voluntarily dismisses his action as one for specific performance, and elects to continue it as one for damages for non-performance, the dismissal operates as an abandonment of .the claim for injunction as well as the claim for specific performance, and an action will at once lie on the injunction bond given in the case without awaiting the termination of the suit for damages. The case of *Brown v. Galena Mining and Smelting Co.,* 32 Kan. 528, 4 Pac. 1013, distinguished.

4. ——— *Action on Bond—Case Followed.* An order of court dismissing a proceeding for an injunction, made on the applica-

Tullock v. Mulvane.

tion of the party who instituted the proceeding, is a final decision that the injunction ought not to have been allowed, and an action will thereupon lie on the injunction bond. The case of *Mitchell v. Sullivan*, 30 Kan. 231, 1 Pac. 518, affirmed and followed.

5. ———— *Opinions of Court as Evidence of Issues.* When the judgment in a cause does not clearly disclose the questions at issue and decided, nor does the mandate of affirmance of a reviewing court to which the cause has been appealed make such disclosure, the written opinion of the appellate court may be introduced in evidence to ascertain the issues involved and actually decided.

6. ———— *Attorneys' Fees—Amount—Hypothetical Questions.* Charges for attorneys' services may be rightfully made in view of the special importance of the litigation to the client, as that the successful termination of the suit has saved him from bankruptcy, and in such case, if the party has made payment of fees to correspond with the special importance of the litigation to himself, and if, for any reason, the amount paid constitutes a demand chargeable to another person, the special facts showing the importance of the case may be proved, and a hypothetical question as to the value of the services based thereon may be asked of qualified witnesses.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed April 7, 1900. Affirmed.

*Rossington, Smith & Histed*, for plaintiff in error.

*A. L. Williams*, and *N. H. Loomis*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This is the second time this case has been before us. (*Mulvane v. Tullock*, 58 Kan. 622, 50 Pac. 897.) When first here it was reversed, principally for the reason that the court below erred in holding that the expenditure of attorneys' fees in procuring the dissolution of an injunction in the federal courts was not recoverable as damages in a suit on the injunction bond. After the return of the case to the

lower court a trial was had, resulting in a verdict and judgment for the plaintiff, Mulvane, in the sum of $25,000, principally for attorneys' fees expended by him in procuring a vacation of the injunction order. The defendant, Tullock, has prosecuted error to this court.

Summarized, the facts were that Mulvane had contracted to sell to the firms of Coffin & Stanton and Woodbury & Moulton the capital stock of the Topeka Water-supply Company for the sum of $550,000. The firm of Wescott & Hanson claimed that Mulvane had previously contracted to sell the same stock to them, and they accordingly brought an action in the United States circuit court to compel the specific performance of the agreement to sell to them, and for an injunction restraining the execution of the contract for the sale and delivery of the stock to Coffin & Stanton and Woodbury & Moulton. The granting of the order of injunction was resisted by Mulvane. It was, however, allowed, but was subsequently dissolved by the circuit court. A condition to the allowance of the injunction was the deposit of $75,000 in money in lieu of an injunction bond and as security for the damages the defendants might sustain. The order for the making of the cash deposit was subsequently changed to allow the substitution of an injunction bond. This bond was given and is the one now in suit. Subsequently an agreement was made between the complainants and the defendants by which the bill for specific performance was dismissed, but the case was allowed to proceed as though at law for damages for non-performance instead of in equity for specific performance ; however, it was agreed that the stipulation of dismissal should in no manner " enlarge or lessen or in any manner affect the rights or remedies

Tullock v. Mulvane.

of the said Mulvane against the complainants in this or any other action." Subsequently the bill for damages was heard and was dismissed with costs in favor of the defendant, Mulvane. Soon after the making of the order last mentioned suit was instituted on the injunction bond. Subsequently the complainants appealed to the circuit court of appeals from the order of dismissal entered in the circuit court. The circuit court of appeals, upon a hearing, affirmed the order of dismissal made by the circuit court.

The first contention of the plaintiff in error is that attorneys' fees are not allowable as damages in a suit on an injunction bond given in a case in the federal court, but that, in the event of a dissolution of the injunction and the consequent occurrence of a liability on the bond, the court granting the injunction awards damages on the bond in a proceeding ancillary to the injunction case. This was the main contention of Tullock, the surety on the bond, when the case was here before. It was fully considered then and held to be unfounded. No additional arguments have been advanced or additional authorities cited influencing us to take a different view of the question.

*1. Attorneys' fees as damages — case followed.*

It is next contended that attorneys' fees are not recoverable under the petition as originally framed, and that the court erred in permitting an amendment to the petition specifically itemizing the claim for attorneys' fees and demanding judgment therefor. The claim for damages made in the petition previous to its amendment read as follows: "Plaintiff further alleges that he has received damages caused by the issuance of said injunction in the sum of seventy-five thousand dollars, for which sum of money he prays judgment."

*2. Amendment to petition on second trial — case distinguished.*

No motion to require this petition to be made more definite and certain in respect to the items of damages claimed was made, but upon the allegation above quoted the parties proceeded to the trial first had prior to the reversal of the case before mentioned, as well as to the last trial, from which the present proceeding in error was prosecuted.

Upon the first trial the several items of the plaintiff's demand for damages were specifically stated and testified to by him. The defendant became fully aware upon that trial of the particulars constituting the plaintiff's demand for attorneys' fees and other damages. Upon the second trial objections were made to the reception of evidence for the reason that the claim for damages was insufficiently pleaded. The objection was overruled, but at the close of the plaintiff's evidence he asked and obtained leave to amend his petition to correspond with his proof by itemizing the various sums constituting his demand. Although upon the making of the amendment to the petition the plaintiff's counsel asked for a postponement of the trial because of the allowance of the amendment, yet the request was not made upon the ground that they had been misled or surprised by the plaintiff's testimony or the making of the amendment, or that they had been ignorant of the items of the plaintiff's demand and were unprepared with counter-evidence, nor indeed could such claim of surprise or ignorance have been made, because, as before stated, the case had once before been tried, and a full disclosure of the plaintiffs' demand had then been made. The case in that respect is unlike *Walker v. O'Connell*, 59 Kan. 306, 52 Pac. 894, and is unlike it in the further respect that the petition in that case lacked an essential averment—

one without which it was demurrable for insufficiency of facts to constitute a cause of action, while in this case the petition, as originally framed, was not demurrable for insufficiency but subject only to a motion to make it more definite and certain, which motion, so far as we are advised or the record before us shows, was never made.

It is next claimed that the action was prematurely brought because instituted while the appeal of Wescott & Hanson from the decree of dismissal of their bill was pending in the circuit court of appeals. As before stated, the bill of Wescott & Hanson for specific performance was dismissed by them and the action thereafter proceeded as one for damages for breach of contract. Although the suit on the injunction bond was not brought until after the voluntary dismissal of so much of complainants' bill as prayed for specific performance, and not until after the trial subsequently had of the bill for damages and the adverse decision made therein, the plaintiff in error claims that the right of action on the injunction bond became stayed as a consequence of the appeal from the order dismissing the bill for damages. This claim is untenable, and especially so in view of the decision subsequently rendered by the circuit court of appeals upon the hearing of the appeal. In its opinion that court remarked :

"It is assigned for error that the circuit court erred in dissolving the temporary injunction as well as in dismissing the bill on the ground heretofore stated. As the first of these assignments was somewhat pressed on the argument, it becomes necessary to say, and we think it is all-sufficient to say, that the appellants cannot be heard to complain in this court of the order dissolving the temporary injunction after

*3, 4. Effect of dismissal—case distinguished.*

voluntarily withdrawing so much of their bill as
sought a specific performance of the alleged contract.
An injunction could only be awarded as an incident
to that species of equitable relief, and when the alle-
gations and the prayer of the bill looking to that form
of relief were withdrawn the injunction necessarily
shared the same fate." (*Wescott v. Mulvane*, 7 C. C. A.
242, 58 Fed. 308.)

In the view of the circuit court of appeals, the dis-
missal of the bill for specific performance was a dis-
missal of the incident claim for an injunction. In
this view we fully concur. The effect of the volun-
tary dismissal was to abandon the claim for an in-
junction and to ripen the hitherto contingent liability
on the injunction bond into one of absolute character.
The appeal was not from the order dismissing the bill
for specific performance, because that dismissal was
had at the instance of the complainants themselves.
The appeal was not from the order dismissing the bill
for injunction, because that dismissal was involved in
the dismissal of the claim for specific performance,
and was likewise voluntary, as above shown. The
appeal was from the order dismissing the bill for
damages. With the character of the bill as one for
damages the prayer for injunction was nowise re-
lated. There was no appeal from the order dismissing
the injunction feature of the bill and nothing in the
controversy which was retained before the court which
had the effect to suspend liability on the injunction
bond. There is nothing in the case of *Brown v. The
Galena Mining and Smelting Co.*, 32 Kan. 528, 4 Pac.
1013, which militates against this view. In that case
it was held :

"In a suit brought for a perpetual injunction, a
right of action does not accrue on an undertaking
given on the issue of a temporary injunction, or re-

Tullock v. Mulvane.

straining order, until a final judgment in the suit in which it was issued is rendered; and a suit commenced on such undertaking, before such entry of judgment, is prematurely brought, and cannot be maintained."

The sole purpose of that suit was to obtain a perpetual injunction. The injunction asked for was not auxiliary to some other relief prayed for. It was therefore rightly held that a suit upon the injunction bond would not lie merely because the temporary order had been vacated, because upon the final hearing a perpetual injunction might have been allowed, notwithstanding the vacation of the temporary order. The injunction bond in that, as in all other cases, was conditioned for the payment of damages "if it be finally decided that the injunction ought not to have been granted," and until final hearing it could not have been finally so decided. But in a proper sense it had been finally decided that the injunction order in the case of *Wescott v. Mulvane*, supra, ought not to have been granted. The case is within the principle of *Mitchell v. Sullivan*, 30 Kan. 231, 1 Pac. 518. In that case it was ruled :

"Where a plaintiff, on commencing a suit and obtaining a temporary injunction, gives an undertaking to secure to the party injured the damages he may sustain if it be finally decided that the injunction ought not to have been granted, and subsequently appears in court and dismisses the action without prejudice to a future action, and the court enters judgment dismissing the action, such judgment is equivalent to a final decision by the court that the plaintiff was not entitled to the temporary order of injunction, and after the judgment an action lies upon the injunction undertaking."

It is next contended that the contingency specified in the injunction bond, upon the occurrence of which

the liability of the sureties depended, never happened. The argument in support of this contention is that it never was finally decided that the injunction ought not to have been granted, but that without awaiting a decision on the question the bill for injunction was voluntarily dismissed. There are two sufficient answers to this claim. First, a party cannot wrongfully sue out an injunction against his adversary and escape liability for the damages which consequently follow by voluntarily dismissing his action in anticipation of an adverse decision. In such case the order of dismissal made upon the complainant's application is an adjudication that the injunction ought not to have been granted. This point was expressly decided in *Mitchell v. Sullivan*, supra; but an equally conclusive reply to the plaintiff in error in this respect is that in the case of *Wescott v. Mulvane*, when it was finally decided that the injunction ought not to have been granted. Before the complainants voluntarily dismissed their bill for injunction a hearing was had as to the rightfulness of granting it in the first instance. Upon that hearing an order dissolving the injunction was made. While in chancery practice the rightfulness of all interlocutory orders come up for review again upon final hearing, yet, unless reversed or otherwise changed upon the final hearing, they become final decisions either as of the time when made or as of the time of review.

It is next contended that there was a failure to separate the attorneys' fees which Mulvane claimed he had paid in the injunction branch of the case from those paid for defending the bill for damages for nonperformance of contract, and, also, that a portion of that for which he made claim was paid for services not rendered to him but rendered to other defendants

Tullock v. Mulvane.

in the injunction proceeding.  We have examined the evidence as to this.  The plaintiff in error is mistaken. We have also examined the instructions of the court in respect to the apportionment of attorneys' fees between the several parties and in respect to the separate contracts for attorneys' services in the case, and likewise have examined the requests for instructions on those subjects made by plaintiff in error, and find no error committed in the instructions given nor in refusing the requests for instructions.

It is next contended that the court erred in admitting as evidence in the case the opinion of the circuit court of appeals.  (*Wescott v. Mulvane,* supra.)  The principal ground on which this contention is made is that the opinion of a court does not constitute a part of the record in the case, and, in addition to this, it is claimed that the *resume* of facts contained in the opinion in question was in the nature of evidence on controverted points, and was therefore hearsay in character.  The opinion of a court does not ordinarily constitute a part of the record of the case, and is therefore inadmissible except for certain purposes. It is, however, admissible in all cases if necessary to explain or characterize the points at issue in a case and decided by the court.  There are some few holdings to the contrary, but the general rule is as stated. This case is an instance of the propriety of using the opinion of a court for the purpose of an understanding of the judgment rendered by it.  It was, of course, necessary for the plaintiff in the court below to prove that the injunction issued against him had been dissolved, and that a final decision had been made that such injunction ought not to have been granted. The best evidence of those facts was, of course, the

5. Opinions of court as evidence of issues.

record of the federal courts trying the case. For the purpose of record evidence, the mandate to the circuit court issued by the circuit court of appeals was introduced. That mandate recited the fact of the proceeding in the circuit court, the appeal to the circuit court of appeals, and the hearing of the appeal in the last-named court. The mandate concluded in the two paragraphs following :

" In consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause, be, and the same is hereby affirmed with costs ; and that Joab Mulvane recover against George P. Wescott and Samuel Hanson the sum of twenty dollars for his costs herein and have execution therefor.    October 16, 1893.

" You, therefore, are hereby commanded that such proceedings be had in said cause, as according to right and justice, and the laws of the United States, ought to be had, the said appeal notwithstanding."

It will be observed that this mandate did not disclose the particulars or even the general nature of the decree of the circuit court which had been affirmed by the circuit court of appeals. To ascertain the decision of the first-named court, which had been affirmed by the one last named, it became necessary to resort to extrinsic evidence. It is true that the record of the circuit court was in evidence, and that such record showed that the bill of complainant had been dismissed, but the ground of the dismissal was not stated in that record with the particularity necessary to a complete understanding of the case, and to a full knowledge of the fact that it had been finally decided that the injunction ought not to have been granted, or necessary to a knowledge of the fact that in the judgment of the court the dismissal of the bill for specific performance carried with it a dismissal of the

Tullock v. Mulvane.

incident claim for injunction; hence, the opinion of the circuit court of appeals was proper, if not necessary, in explanation of the points in issue and of the thing finally adjudicated. The law is quite well settled that for purposes of such explanation the opinions of courts are receivable in evidence. (1 Van Fleet, Form. Adj. § 278; *Lawrence v. Stearns*, 79 Fed. 878.) A trial court in giving effect to the mandate of the appellate tribunal should construe the mandate in the light of the opinion of the reviewing court (13 Encyc. Pl. & Pr. 847), and, for the same reason, when necessary for any purpose to an understanding of the mandate or judgment of a court, its accompanying opinion may be examined. (2 Van Fleet, Form. Adj. § 421.)

But independently of the rule of the admissibility of the opinions of judges to identify the points decided and the judgments rendered, and assuming the non-existence of such rule, there was nothing in the opinion of the circuit court of appeals prejudicial to the defense of the defendant in the court below. The recitals of fact contained in it were not different from the facts proved upon the trial of the case, and the error, if it were to be called such, would therefore have to be regarded as unsubstantial and harmless.

It is next contended that a hypothetical question as to the value of the attorneys' services was based, in part, upon certain assumptions of fact — not facts given in evidence — and also that it contained a certain element not admissible to be stated in the question or considered by the jury. As to the first of these objections, the plaintiff in error is mistaken. The hypothetical question, in the particulars mentioned, had a basis in the evidence. As to the other objection, the plaintiff in error is also mistaken. The defendant Mulvane had

6. Amount of attorneys' fees, and proof.

testified that, because of the nature of his business at and about the time of the making of the contract for the sale of the water-works stock, and in particular on account of obligations he had assumed in purchasing some of it from other stockholders, he would have been bankrupt had not the injunction prohibiting the completion of the sale to Coffin & Stanton and Woodbury & Moulton been dissolved. The importance of the litigation to him in view of this state of his business affairs was made an element of the hypothetical question asked. There was no error in this. The general rule is that the importance of a case to the client, and the benefits received by him through the successful termination of the litigation, as well as the general nature and character of such litigation, and the questions of law and fact involved in it, may be considered in determining the value of the legal services performed and the compensation to which the attorney is entitled. In a general way this rule was remarked upon in *Ottawa University v. Parkinson*, 14 Kan. 160. In the case of *Bentley v. Brown*, 37 Kan. 14, 14 Pac. 434, it was said that it is the duty of the court in determining the value of legal services to take into consideration "the terms of employment, the character of the litigation in which the services were rendered, the manner in which the services were performed, the time occupied, and the benefits resulting to the defendant in error from the services." In *Selover v. Bryant*, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, an instruction to the jury that, in arriving at the compensation justly payable for attorneys' services, their value to the client should be taken into account was approved by the court. The point was disposed of in the following paragraph of the opinion:

"The only other assignments of error which we deem worthy of specific mention are those relating to

Tullock v. Mulvane.

the charge of the court that the value of the services (of the plaintiff) 'to Mrs. Bryant,' should be considered by the jury. There was no error in this. The court did not say that that consideration alone should be taken as the measure of value. The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit. Among other things, the importance and results of the case are to be considered. The importance of the cause to the client affords to some extent a measure of the skill, care, responsibility, anxiety and effort demanded of and to be borne by the attorney and should not be disregarded in their bearing upon the question of the value of such services."

We take it that if the hypothetical question had merely stated that the litigation was of great pecuniary importance to Mulvane, no objection worthy of consideration could or would have been made. If it would have been proper to state in general terms that the litigation was of great financial importance, no reason is perceived why the particular facts showing its importance might not be stated.

The bond given by the plaintiff in error was conditioned to pay all damages which the defendant in error might sustain. This was not, of course, an obligation to pay damages remote, conjectural or speculative in character, but only to pay such damages as were the actual, natural and proximate result of the granting of the injunction order. (High, Inj., 3d ed., § 1663.) The natural and probable result of the issuance of the injunction order was the employment of attorneys to procure its dissolution and the payment to them of fees commensurate with the services performed. There was no way of apportioning the compensation charged by the attorneys for services performed without the element of exertion to save

from impending bankruptcy or exertion to save because of it. Perhaps, if the injunction had continued for such length of time as to have resulted in Mulvane's bankruptcy, the plaintiff in error would not have been liable to him for the restoration of his fortune, because the bankruptcy of the defendant in an injunction proceeding is not the natural or ordinary result of the injunction order; but the natural and ordinary consequence of an injunction order is the payment of counsel fees commensurate, among other things, with the special importance of the case to the defendant, and the special results accruing to him through the dissolution of the injunction order. The surety in such cases is required to know that the defendant in the injunction proceeding will put forth all necessary efforts to save himself from all harmful consequences, and the obligation assumed by the surety is to reimburse the defendant for all expenses reasonably and necessarily incurred in averting such consequences.

Lastly, it is claimed that the damages awarded were excessive. This was entirely a question of fact for the jury. Testimony of attorneys of long experience, large practice and high professional character was taken, and much of it fully supported the verdict rendered. The verdict therefore is conclusive upon us.

There is no error in the record and the judgment of the court below is affirmed.